## Hasley's Appeal.

Argued October 28, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Horton Smith,* for appellant.

*Leon Wald,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

*William A. Meyer,* for intervenors, appellees.

OPINION BY BALDRIGE, J., January 28, 1943:

Frances M. Hasley has appealed from the order of the court below affirming the Board of Adjustment in refusing her a permit to operate a nursing home in a district zoned as a "B" residence district under the Zoning Ordinance of the city of Pittsburgh.

She raises two principal questions: (1) the Board of Adjustment, having granted a permit four months previously allowing the operation of a nursing home by another person in a "B" district, acted arbitrarily and is guilty of discrimination in denying her a permit; (2) that nursing homes are not, under the terms of the Zoning Ordinance, expressly forbidden in "B" residence districts and should be allowed as accessory to the permitted uses specified for a "B" residence district. The appellant asks that the board be directed to grant her a permit, and if refused that the case be remitted to the board so that it could adopt a uniform policy.

The parties agree by a stipulation filed after argument in this court that nursing homes are an expressly permitted use in an "A" residence district under the city ordinance; that out of eight appeals taken to the Board of Adjustment, seeking permission to operate nursing homes in "B" residence districts in the city of Pittsburgh (including the present appellant) between March 1935 and February 1941, all except one were denied. The one granted on December 30, 1940 was to operate a nursing home at 6735 Penn Avenue, "after a hearing at which three persons appeared for the application and none appeared in opposition."

The fact that the board, in one instance, granted per-

mission to operate a nursing home in another "B" residence district, while refusing appellant's application, does not, of and in itself, show discrimination. The circumstances in each case might well have been substantially different. Questions of fact relating to the nature and use of premises are primarily within the province of the administrative officials and boards appointed to enforce the provisions of zoning laws: *Krink's Case (McKeesport's Appeal)*, 128 Pa. Superior Ct. 405, 408, 194 A. 231 (affirmed in 332 Pa. 236, 2 A. 2d 700). Where an official body in its administrative capacity has acted upon a matter properly before it we do not reverse except for substantial reasons constituting a manifest and flagrant abuse of discretion: *Perelman et al. v. Yeadon Borough,* 144 Pa. Superior Ct. 5, 10, 18 A. 2d 438; *Valicenti's Appeal,* 298 Pa. 276, 148 A. 308; *Jenning's Appeal,* 330 Pa. 154, 159, 198 A. 621. In the case at bar there was testimony by neighbors and persons opposing the granting of the permit. They stated that this particular nursing home, with numerous persons entering and leaving the premises, was objectionable to this residential district.

The previously issued permit, even if in violation of the terms of the ordinance, does not amount to a waiver or nullification of the terms thereof, or estop the city and board from enforcing the ordinance in other cases. The right of the property owners who protested to granting this permit should not be prejudiced by an erroneous decision of the Board of Adjustment involving a property in another section of the city. It has been held quite uniformly that permitting some persons to violate a zoning regulation does not preclude its enforcement against another: *Valicenti's Appeal,* supra, pp. 283, 284; *New Castle City v. Withers,* 291 Pa. 216, 139 A. 860. See, also Annotation, "Right of Municipality to Enforce Zoning Regulations as Affected by its Previous Conduct in Per-

mitting or Encouraging Violation Thereof." 119 A. L. R. 1509, 1517.

To hold otherwise would permit nullification or amendment of the ordinance by the administrative, rather than by the legislative, body. Such a practice does not receive judicial sanction: 3 McQuillin, Municipal Corporations, page 651, section 1185 (2d Ed., 1928).

Appellant does not allege that the ordinance itself is unreasonable because not uniform throughout each zoning district, as in *De Blasiis et al. v. Bartell & Oliveto*, 143 Pa. Superior Ct. 485, 18 A. 2d 478, or discriminatory because so uncertain as to furnish no standard for the guidance of zoning officials as in *Taylor v. Moore*, 303 Pa. 469, 478, 479, 154 A. 799. Her grievance is that the board is guilty of discrimination in the *administration* of the ordinance. We concede that uniformity in this regard is desirable. "In applying the [zoning] regulations, the administrative officers are required to observe a uniform course where the conditions are uniform, and thus treat all property alike." 3 McQuillin, Municipal Corporations, supra, page 364, section 1050.

The facts, however, in this record do not show any such disregard or general waiver of the terms of the ordinance by the administrative officials, as to amount to a settled policy not to enforce it. Nor is such a difference in interpretation on substantially the same facts shown as would open the door to the charge of discrimination in the administration of the ordinance and consequent abuse of discretion.

We come now to consider whether the nursing home is forbidden by the ordinance, the second question raised by the appellant. The uses permitted in a "B" residence district include: "(1) One Family Dwelling; (2) Two Family Dwelling; (3) Double House; (4) Church; etc., and accessory uses 'incident to any of the

principal uses above listed and not involving the conduct of a *business* ......' " (Italics supplied.)

A nursing home, which is not one of the expressly mentioned permitted uses in the ordinance, cannot be classed as a use accessory to the permitted uses because (a) the operation of a nursing home, under the circumstances disclosed by this record, is not *incidental* to use of the premises as a dwelling but constitutes the principal use thereof, and (b) such operation involves the conduct of a *business*. Petitioner (appellant) testified before the Board of Adjustment that, under her license from the state, she was allowed twenty beds and equipped to take care of twenty patients, had four or five uniformed nurses in attendance and a staff of three house doctors on call. In reply to the question: "Mrs. Hasley, what is your business?" she answered: "My business is a nursing home." It thus appears that the appellant desired to conduct in a residential district a business which clearly is not permitted by the terms of the ordinance. The express mention of permitted uses impliedly excludes all others: *Dixon's Case,* 138 Pa. Superior Ct. 385, 390, 11 A. 2d 169.

No legal reason has been advanced justifying us in setting aside the action of the Board of Adjustment.

The decree of the court below is affirmed at appellant's costs.