## Staples et al. v. McShain et al.

*C. Brewster Rhoads* and *Robert L. Trescher*, for appellants.

*G. Coe Farrier*, assistant city solicitor, for Zoning Board of Adjustment.

*Joseph X. Yaffe*, for Philadelphia Society for Crippled Children and Adults.

MILNER, J., February 1, 1950.—This is an appeal from a decision of the Zoning Board of Adjustment of the City of Philadelphia granting a certificate of variance and authorizing the issuance of a permit for the use of 2425 North 59th Street, Philadelphia, as a school for cerebral palsied children. It comes before us upon a writ of certiorari directed to the said zoning board of adjustment.

The decision of the zoning board of adjustment, containing its findings of fact, conclusions of law and order, is as follows:

"CITY OF PHILADELPHIA
"ZONING BOARD OF ADJUSTMENT
"1022 CITY HALL ANNEX
"IN RE PREMISES 2425 NORTH 59TH STREET
"APPLICATION NO.
"APPLICANT: PHILA. SOCIETY FOR CRIPPLED CHILDREN
"CALENDAR No. I-1794.

"This is an appeal to the Zoning Board of Adjustment from the action of the Bureau of Engineering, Surveys and Zoning, in refusing to issue a Use Registration Permit for Use of the above premises situate

2425 N. 59th St., in the City of Philadelphia, located in an "A" Residential District.

"The refusal of the Permit by the Bureau of Engineering, Surveys and Zoning is based on the grounds that the building is not located 75 ft. or more from the adjoining property line.

"There are several small buildings and port-cochere on the grounds which the applicant took to eliminate as part of the property used.

"The property is heavily wooded and cannot be observed from adjoining properties.

"There are a number of such institutions in the immediate neighborhood and the Use proposed to be made of the property is a Clinic School for Cerebral Palsied Children between the ages of four and twelve years which could not by any stretch of the imagination be detrimental to the neighborhood. The agency which operates the School is a very fine charity, and the school is not operated for profit.

"The Board finds that the children to be cared for in this School are parties in interest in this matter, and it would be an extreme hardship upon them to be deprived of an opportunity to obtain the care and training provided by the School.

"The Board also finds that the immediate neighborhood contains Uses not in conformity with the area designation and it would be a hardship on the Applicant and the children to be trained if the strict requirements of the Ordinance with respect to area uses were to be applied.

"The Board is, therefore, of the opinion that a Variance should be granted and therefore directs that a certificate of Variance authorizing the issuance of a Permit should be granted.

    /Sgd/   "DAVID M. WALKER
             "David M. Walker, Secretary
             "ZONING BOARD OF ADJUSTMENT."

In accordance with section 8 of the Act of May 6, 1929, P. L. 1551, we have also heard the testimony of the parties in order to come to our determination of the propriety of the board's order, and may say at this point that we are convinced that the decision of the board of adjustment was entirely justified under the facts and the law.

In considering this matter upon our review by certiorari in its broadest sense we are called upon to review the evidence and determine whether there has been an error of law committed: Commonwealth v. Hildebrand, 139 Pa. Superior Ct. 304, 308 (1939). It has generally been held that there is a presumption of correctness in the findings of a zoning board (see Annotation in 117 A. L. R. 1127; Hasley's Appeal, 151 Pa. Superior Ct. 192), and appellants have the burden of showing affirmatively that the board abused its discretion: Perelman et al. v. Yeadon Borough Board of Adjustment et al., 144 Pa. Superior Ct. 5, in which case it was said at pages 10 and 11:

" 'Factual questions which relate to the nature and use of premises are primarily within the province of the administrative officials and boards appointed to enforce the provisions of zoning laws': Krinks' Case (McKeesport's Appeal), supra. The decision of an administrative board having jurisdiction to determine the questions of fact submitted for its consideration, is entitled to great weight and, as stated in Jennings' Appeal, 330 Pa. 154, 159, 198 A. 621, 'should be set aside only for substantial reasons'.

"It has been held frequently that where an official body in its administrative capacity has acted upon a matter properly before it the court should not reverse except where there is a manifest and flagrant abuse of discretion. See Liggett's Petition, 291 Pa. 109, 139 A. 619; Valicenti's Appeal, 298 Pa. 276, 148 A. 308; and

Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 178 A. 813. . . ."

"Section 7 of the Act of 1923, supra, 53 PS Section 15737, specifically enumerates one of the powers granted as follows: 'The Board of Adjustment shall have the following powers: . . . (3) To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done. . . .' It is thus apparent that the principal duty of the board of adjustment is to decide factual matters.

"If a court can set aside the findings of the board refusing or granting a variance, which are supported by substantial evidence and not otherwise erroneous as a matter of law, and decide the factual question itself, the board will become more or less a useless formality. If the board's determination is shown to be arbitrary and contrary to the weight of the evidence the court is authorized and should make its own ruling: Gilfillan's Permit, 291 Pa. 358, 363, 140 A. 136; Junge's Appeal (No. 1), 89 Pa. Superior Ct. 543."

The Philadelphia Society for Crippled Children and Adults has purchased premises 2425 North Fifty-ninth Street, Philadelphia, which is located in a residential section known as Overbrook. The immediate section in which the property is located has been designated by the zoning board as "A" residential. The premises in question consist of a lot facing along Fifty-ninth Street for a distance of 225 feet and extending in depth 180 feet. The improvements consist of a substantial two and one-half story stone house, with a stone porte-cochere and accessory garage. One side of the house measuring from the porte-cochere, is 69 feet 1 inch

from the nearest adjoining property. The rear of the house, measuring from the rear of the porte-cochere, is 53 feet 7 inches from the nearest property. There is also an ornamental stone pergola on the property.

The Society for Crippled Children is a charitable organization chartered as a nonprofit corporation and proposes to use this property as a school for cerebral palsied children. There will be a limit of 25 children between the ages of 4 and 12 years, who will be brought to the school in automobiles and who will enter at the porte-cochere. They will be in attendance from 9 o'clock in the morning until 3 o'clock in the afternoon, when they will be delivered to their homes in automobiles. It will not be a boarding school and no one will live in the house except the caretaker. It will be closed in the summer months, over weekends and on holidays. There will be no outside activity because of the nature of the crippled children. The property is beautifully landscaped and the main portion of the lot on which the house is built is about 20 feet above the grade of Fifty-ninth Street. The property is screened by evergreens and shrubs and this affords privacy to the occupants of the premises in question as well as to the occupants of adjoining properties. It will not be operated as a clinic or hospital. The society has a clinic at another location. At the clinic the children are examined, and given their orthopedic and other treatments, and those who are mentally normal are selected to be sent to the school where they are taught to read, write and talk and take care of their elementary needs. Mentally retarded children are not accepted as pupils in the school. Eight of the appellants are property owners who live in the neighborhood of 2425 North Fifty-ninth Street, and the other appellant is an organization of residents of Overbrook, known as Overbrook Farms Club. They make no claim that the establishment of this school will constitute a nui-

sance, nor do they contend that it is not permissible to conduct schools in a district zoned as "A" residential. They rely solely upon the contention that the zoning board abused its discretion in granting an area variance.

Under the authority of the Zoning Act of May 6, 1929, supra, and the Zoning Ordinance of the City of Philadelphia, approved August 10, 1933, as amended, the immediate area in and around premises 2425 North Fifty-ninth Street is designated as "A" residential district. Section 7, subsec. 5, of the ordinance permits the use of buildings in such a district for schools. Subsection 19(c) of section 7 provides:

"Every building, other than a dwelling, shall have two (2) side yards, the aggregate width of which shall be not less than thirty (30) feet and neither of which shall be less than fifteen (15) feet, provided, that every such building located on a corner lot shall have the building set-back on the intersecting street adjudged a side yard, and the other or inside yard may be reduced to a width of not less than ten (10) feet."

The building in question is "other than a dwelling" and it has more than the necessary width on each side and conforms to the requirements of the ordinance. Appellants' counsel in their brief state their position thus:

"Section 7 of the Zoning Ordinance permits schools and public institutions within an 'A' residential district, but provides that they shall be located at least 75 feet from any adjoining lot or lots."

They do not quote a portion of the Zoning Ordinance to sustain their contention and we are unable to find any. The ordinance does not require schools to be located at least 75 feet from any adjoining lot or lots. The only requirement that a building be 75 feet from an adjoining lot or lots is contained in subsection 21 of section 7, which reads as follows:

"(21) Hospitals, sanitaria, eleemosynary and public institutions (other than correctional) shall be located at least seventy-five (75) feet from any adjoining lot or lots."

Subsection 5 of section 7, permitting the use of buildings as schools, has no such provision requiring that they be 75 feet from adjoining lots. It reads: "(5) Schools, colleges, universities, convents and dormitories." It will be noticed that schools are grouped with a different class of eleemosynary institutions than hospitals, etc. The evidence shows clearly and conclusively that the premises at 2425 North Fifty-ninth Street are to be used as a school and not as a hospital, sanitarium, or similar institution. In Brunswick v. Zoning Board of Adjustment, C. P. No. 3, March term, 1947, no. 782, Judge Mawhinney of this court decided that the 75-foot requirement of section 7, subsec. 21, did not apply to private schools. We are of the opinion that the contention of appellants, based upon their interpretation of section 7 of the Zoning Ordinance, is untenable and that the society was entitled to a permit to use the property as a school and there could be no abuse of the board's discretion in granting such a permit.

Even if we assume that the 75-foot provision applies to property proposed to be used by the Society for Crippled Children as a school, we are convinced that the board was not guilty of an abuse of its discretion in granting a variance in this case.

Zoning laws are an exercise of the general police power of the State and as stated in section 1 of the Act of May 6, 1929, supra, they are enacted to promote "the health, safety, morals, and general welfare of the community".

"Zoning ordinances, being in derogation of common law and operating to deprive an owner of property of a use thereof which would otherwise be lawful, are

to be strictly construed in favor of the property owner": Yokley, Zoning Law, p. 3. The provision in the Zoning Law of 1929 authorizing the zoning board of adjustment to grant a variance "where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done" was inserted to afford a safety value so that the carrying out of the strict letter of the zoning ordinance would not occasion unnecessary hardship to particular property owners.

The Society for Crippled Children has 25 children eligible for instruction in the school; they have in addition about 157 crippled children on the waiting list, who must be psychologically tested and their educability determined. The school which the society conducted at 4436 City Avenue was found to be unsafe and a fire hazard and it is necessary to obtain another building to house the crippled children on the list of those eligible for instruction. The evidence indicates that the society has for about two years past been endeavoring to secure a building they could use as a school without success. If the requirement that its buildings must be 75 feet from any adjoining lot should be held to apply to a school and be strictly enforced it would impose an unnecessary hardship upon the owner of the property and upon the real parties in interest who are the little crippled children who will be deprived of a chance to get started upon an education within their capabilities which is not provided elsewhere. The few feet which the property is short in meeting the requirements of the Zoning Ordinance, which appellants claim apply in this case are trivial and to grant a variance would be within the spirit of the ordinance and would be doing substantial justice to all parties concerned. Certainly it would be an unnecessary hardship to compel the society to remove the

porte-cochere, the accessory garage and the ornamental pergola. It is difficult to conceive how appellants or other property owners in the immediate neighborhood can be harmed by the granting of the variance. Their only evidence to show how they are affected was that of a real estate broker whom they called who stated that in his opinion the location of the school in the neighborhood of Overbrook with which we are concerned "would make the surrounding private residences more difficult to sell". A real estate broker called by respondents testified that he has had a long experience in selling properties in the Overbrook section and he had had no difficulty in selling properties in the section because of their proximity to schools or public or private charitable institutions and that difficulty encountered is in selling large houses today regardless of their surroundings. He testified to the location of a number of other schools and charitable institutions in the immediate vicinity of 2425 North Fifty-ninth Street, some of which have been located there since the zoning ordinance went into effect. In an address entitled "The Legal Background of Zoning", delivered in Hartford on November 12, 1947, the Hon. W. M. Maltbie, chief justice of the Supreme Court of Errors of Connecticut, in discussing the importance of the duties imposed upon board members, had this to say:

"Their function is a very important one, in that the control of property values lies largely in their hands. They are entrusted with the exercise of one aspect of the far reaching police power of the state. They must always bear in mind that the issue before them is never primarily the profit or loss to a particular individual, but the maintenance of such a system of zoning, as will best serve the interests of the community as a whole. . . ."

In White's Appeal, 287 Pa. 259 (1926), it is said, at page 266:

"There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations."

See also the opinion of President Judge Knight in American Housing Coöperative, Inc., v. Zoning Board of Adjustment, 69 D. & C. 449.

In Appeal of University of Pennsylvania, 29 Del. Co. 322, the court held that a board should be governed by the conscience of its members and not by the wishes of a group of neighbors who object only because they fear the depreciation in value of their properties. Such an objection is not grounded on interests of public health, safety or the general welfare. See Yokley, Zoning Law, sec. 122.

The evidence in this case shows that in the immediate neighborhood of 2425 North Fifty-ninth Street a considerable number of properties have been converted from residential use to institutional use within the last few years with the knowledge of appellants and without protest from them, although they did not comply with the requirements of section 7, subsec. 21. of the ordinance as to 75 feet distance from adjoining properties. Among them are the School of the Seventh Day Adventists, Wynnefield Jewish Center, Salvation Army, the Fairchild School, a private school; the Lorraine School, a private school for children of kindergarten age (on the map of the neighborhood in evidence this property is designated as the "E. A. Landell, Jr.," property), and the Convent of the Sisters of the Visitation, etc. Their locations are marked with blue cir-

cles on the map of the section prepared by the Over-brook Farms Club and placed in evidence. Of course, if appellants are mistaken in their interpretation of the requirements of section 7, subsec. 21, the other schools are also within the provisions of the ordinance and no complaint could be made that they violated the area requirements.

As was held in Valicenti's Appeal, 298 Pa. 276 (1929), the fact that the board has not enforced a requirement of the ordinance in other cases is no reason why it should not enforce it under proper circumstances in a case it has before it. President Judge Bok in Elvan v. Exley et al., 58 D. & C. 538 (1947), referring to the decision in Valicenti's Appeal, said:

"That case held that the Zoning Board was not estopped to proceed against one violation merely because it had not proceeded against other violations nearby—a very different situation, since we are concerned not with violations, but with the propriety of refusing a permit when other permits have been granted in the near vicinity."

In Crawford Zoning Case, 358 Pa. 636 (1948), the Supreme Court reversed the lower court and a zoning board of adjustment which had refused a certificate of variance in a case involving minor breaches of the strict letter of a zoning ordinance with respect to area occupation. In that case almost the identical situation arose as appears in the case at bar, except that it was a restriction limiting area occupation for residential use as opposed to a restriction limiting area occupation for institutional use as claimed in the case before us. The decision is so conclusive of the question before us that we quote from it at some length. Mr. Chief Justice Maxey, in delivering the opinion of the Supreme Court, said (p. 641):

"In cases of this kind the issue is: Are there 'special conditions' which make 'a literal enforcement of the

provisions' of the ordinance 'an unnecessary hardship' on a property owner? The issue can also, under the section of the Township Ordinance quoted in paragraph two of this opinion, be expressed in this way: If 'the variance' asked for be granted, will 'the spirit of this Ordinance' 'be observed and substantial justice done.' Under the facts here present, there are 'practical difficulties' and 'unnecessary hardships' involved in forcing the appellant to comply literally with the letter of the Ordinance; the variance he asks for can be allowed, with due observance of 'the spirit of the ordinance' and with no insecurity to 'the public health, safety and public welfare.'

"To require the appellant to move an existing building 2.2 feet south and 16.5 feet toward the front of the lot in order to come within the exact terms of the zoning ordinance confronts him with a 'practical difficulty' and imposes on him in these days of scarce and expensive labor an 'unnecessary hardship' to the extent of $3,500 with no commensurate benefit to the 'public health, safety and general welfare.' We do not perceive how 'the public health, safety and general welfare' will be prejudiced by permitting the appellant to convert an existing 'garage or carriage house' into a 'single family dwelling' in these days of unparalleled shortage of dwelling houses. The refusal of the permit asked for was based on the fact that the structure when converted into a dwelling house will *not* have 'two side yards of not less than 8 feet and a rear yard of at least 25 feet,' as the zoning ordinance requires. Exactly *what* the size of a side yard and the size of a rear yard should be in such locality is a question which must have been determined arbitrarily by the authorities in the first place, for there is no fixed standard by which it can be infallibly determined that dwelling house side and back yards of a certain size are detrimental to 'public health, safety and general

welfare.' That the building appellant wishes to alter is amply surrounded by space which is vacant, except for desirable trees, is indicated by the fact that the building is sixty (60) feet from the dwelling on the premises to the west, sixty (60) feet from the dwelling on the premises to the north, and ninety-five (95) feet from the dwelling to the south, and if the building is moved to the center of the lot, it will be forty-nine (49) feet from the dwelling to the west, sixty-seven (67) feet from the dwelling to the north, and sixty-six (66) feet from the dwelling to the south. If the building is moved two and two-tenth (2.2) feet southwardly and sixteen and five-tenths (16.5) feet eastwardly in order to comply with the Ordinance, it will be located closer to the dwelling to the north.

"The requirement as to the ample side and back yards is based on aesthetic considerations as well as upon considerations of health and safety from fire hazards. Perhaps the aesthetic consideration is the paramount one in a 'B Residence District', such as the one in which the building in controversy is located. Side yards and back yards of substantial uniformity in size add materially to the 'good looks' of a residential district. But it is not essential to 'good looks' that *all* of the back yards be of *exactly* the same size, and whatever loss of landscape beauty may be occasioned by the fact that the garage now in existence will, when converted into a residence, have a side yard which is 2.2 feet narrower than the standard for that vicinity and that the back yard will be in length 66 percent smaller than the standard will be compensated by the fact that at least six beautiful trees will be saved if the appellant is *not* required to move his garage in two directions, the distances indicated. Shade trees add great aesthetic value to any residential district and any Zoning Board which has due regard for the beauty of a residential

area will hesitate to demand an act which will require the destruction of beautiful trees in order to obtain conformity to the strict letter of a zoning regulation. In almost any scale of values, shade trees in front of a property outweigh a back yard 25 feet in length.

"The appellee cites in justification of the action of the Zoning Board the case of Kurman et al. v. Philadelphia Zoning Board of Adjustment et al., 351 Pa. 247, 40 A. 2nd 381. In that case the Zoning Board refused to authorize the use of a building both as a dwelling and also as a place of religious worship when the side yards of the building did not conform to the requirements of the zoning ordinance relating to the latter type of use. In that case the lack of conformity was due entirely to a bay window which projected into the fifteen foot area required for a side yard. There the court below said that if the plaintiffs desired to use the building for a purpose other than a dwelling house they could meet the requirements of the Zoning Ordinance by a comparatively minor alteration at that one point, i.e., by removing the bay window.

"If in the instant case all that was required of the appellant was a minor alteration, such as the removal of a bay window, we would hold that the Zoning Board acted with due discretion in requiring the appellant to do so in order to conform to the Zoning Ordinance. But in the instant case, as already pointed out, the alteration required means the moving of the building at a cost of $3500 and it also means the destruction of valuable and ornamental shade trees. Under this situation, the action of the Board of Adjustment in refusing the application of the appellant for a permit to make certain interior alterations to an existing building so as to convert the same into a dwelling house was a manifest and flagrant abuse of discretion, as that phrase is used in our opinions.

"What President Judge MacDade said in his dissenting opinion in this case is pertinent, to wit: 'The use of a property for dwelling purposes is considered to be the most desirable of all uses. . . . Any restriction in the use of a property based on the police power of a municipality must bear some relationship to the public health, safety, morale and general welfare of the community. . . . What possible public interest can be served by compelling appellant to move the building two and two-tenths feet in one direction and sixteen and one-half feet in another direction? The adjoining buildings are fixed at their present location. . . . Who can possibly be harmed by the allowance of the variance?' "

The decisions cited by appellants, such as the case of Devereux Foundation, Inc., Zoning Case, 351 Pa. 478 (1945), upon which they mainly rely, would be effective if they applied to an application for a use registration permit, but practically all the decisions of the appellate courts point to the proposition that where the variance is issued with respect to area occupation only and does not permit a prohibited use, the courts of record upon a writ of certiorari should not reverse the decision of the zoning board of adjustment in the absence of clear proof of a gross abuse of discretion. See Crawford Zoning Case, supra.

We are of the opinion that the reasons moving the zoning adjustment board to grant the variance in the case at bar were of substantial and compelling force and that there was a practical necessity for the action of the board. We do not interpret the zoning ordinance as requiring schools in a residential district to be 75 feet from any adjoining lot or lots. Assuming that schools are subject to such a requirement, we are of the opinion that the distance the school in this case is short of meeting the requirement is trivial, and that

it would be an unnecessary hardship to the Philadelphia School for Crippled Children and Adults to refuse a certificate of variance. We believe that public-spirited citizens should encourage the efforts to afford the unfortunate children suffering from cerebral palsy to obtain some measure of education and training to enable them to take their places, according to their capabilities, with other children and adults and that the protest against the variance because one side of the large property in question is 69 feet from an adjoining lot instead of 75 feet and the rear is 53 feet 7 inches instead of 75 feet, is trivial. Especially is this so, inasmuch as they have not seen fit to raise the same objection to the granting of permits to other schools and institutions in the neighborhood. We are therefore of the opinion that the zoning board of adjustment did not abuse its discretion in granting the variance in this case. We are concerned here with an existing building which was built years ago and before the Zoning Ordinance went into effect; we are not concerned with an effort to erect a building in violation of the area requirements of the zoning ordinance. Appellants have clearly not met the burden cast upon them to show substantial reasons constituting a manifest and flagrant abuse of discretion upon the part of the zoning board in granting the certificate of variance. The public health and welfare are in no way jeopardized by the granting of the certificate of variance in this case and in granting it the zoning board was observing the spirit of the zoning law and doing substantial justice. Its determination was not arbitrary nor contrary to the weight of the evidence or the law.

For the reasons given above the appeal in this case is dismissed at the cost of appellants.