## Udylite Corp. v. Philadelphia Zoning Board of Adjustment

*Sterling, Magaziner, Stern & Levy,* for plaintiffs.

*Gordon Cavanaugh,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for defendant.

SPORKIN, J., October 15, 1958.—Plaintiff, Udylite Corporation, on May 23, 1957, as lessee of 2818 E.

Belgrade Street,[1] Philadelphia, applied for a permit to use said premises for the "storage of chemicals and office for sales to manufacturers." The zoning administrator of the department of licenses and inspections denied the requested use registration permit. Thereafter, on June 3, 1957, plaintiff appealed to the zoning board of adjustment from the action of the zoning administrator.

Following notice to interested parties, the board held a public hearing on June 18, 1957, at which testimony was presented on behalf of applicant and by a protestant, and received in evidence photographs of the subject premises and a petition opposing the proposed use, signed by numerous residents of the neighborhood.

The board affirmed the action of the zoning administrator and refused to grant a variance,[2] and on July 24, 1957, a writ of certiorari was issued, which brought the matter before this court. On April 3, 1958, we permitted H. & H. Frankford Corporation, owner and lessor of the premises, to intervene as a party plaintiff.

The record discloses that the property in question is located in a "D-1 Residential" district,[3] that the requested use is permitted as a matter of right only in an area zoned "general industrial,"[4] that for the

---

[1] The property is a garage-type building that extends from the 2818 E. Belgrade Street frontage through to Miller Street in the rear. The front of the structure is two stories, while the rear, which widens at the Miller Street end, is one story in height. Photographs are attached to the record of the zoning board of adjustment proceeding.

[2] The zoning board of adjustment considered this appeal as a request for a variance. See Record of Zoning Board of Adjustment, conclusion of law 2.

[3] Philadelphia Code of General Ordinances, §14-208, provides in effect that "D-1" residential districts are limited to dwellings and certain public buildings.

[4] See section 14-503 (1) (ss) of the Philadelphia Code of General Ordinances, which provides: "(1) Use Restrictions—General. The

past six years appellant, Udylite Corporation, has leased this building and occupied it for the storage of quantities of cleaning compounds in large drums,[5] and for the sale and delivery of said chemicals in smaller quantities to its customers. The record further reveals that except for a saloon, a vacant corner commercial property, a barber shop and a bakery, the 2800 block of East Belgrade Street, including the properties adjoining the garage in question, contains two and three-story row dwellings, that on the west side of Miller Street are numerous dwellings, on the east side thereof are rear yards and private garages of the Belgrade Street dwellings, that appellant lessee's business consists primarily of receiving shipments of chemical cleaning compounds in sealed 100-pound and 400-pound drums, that it does not store more than 100 drums of any one type of said materials at a given time, that daily deliveries are made to the property in large tractor-trailer trucks, as well as in smaller trucks, that these trucks line up along Belgrade Street while waiting to load and unload through the Belgrade Street entrance, and that the trucks frequently park on the pavement while the loading and unloading takes place in the open street and that these operations add materially to the traffic congestion in the area.[6] In

specific uses permitted in this district shall be the erection, construction, alteration, or use of buildings or premises and/or land for: . . . (ss) Warehousing transfer, shipment, or storage of goods, materials, or merchandise, or contracting and building materials."

[5] Caustic tri-sodium phosphate, soda ash and chromic acid in powder form. Also brighteners for nickel solutions and calcium solutions in gallon jugs.

[6] Notes of testimony, page 6, zoning board of adjustment:

By Mr. Cohen: "Q. Have you any comment with respect to the traffic situation?"

By Mr. Monteleone, protestant: "A. When they have two or three trailers at one time waiting to get in there, Belgrade Street is we'll

addition, a large number of neighborhood residents filed written but unsworn protests before the board against the continued operation of appellant lessee's business.

The proposed use of the site for a warehouse and transfer point is not permitted under "D-1 Residential" classification,[7] but could properly and lawfully be utilized for said purposes only if (a) appellants establish nonconforming rights for such use, or if (b) appellants are entitled to a variance.

The only proof of the existence of a nonconforming use of the property for any purpose whatsoever appears from the following colloquy at the hearing:

By Mr. Magaziner, attorney for appellants:

"I am frank to confess I don't know what the use was in 1933."

By Mr. Towey, a witness:

"In 1933 it was used just for storing trucks, machines, in other words a garage, a commercial garage."

The board regarded these rather meagre statements as sufficient proof that the garage use antedated the zoning legislation of August 10, 1933, thus giving the premises a nonconforming status as a garage.[8]

The Philadelphia Code provides [9] that once a building acquires a nonconforming status, the use thereof cannot be changed to a use designated for a district having less restrictive requirements. This implemented the prior existing law. See Veltri Zoning Case, 355 Pa. 135 (1946); Reininger Zoning Case, 362 Pa. 116 (1949). The logic of such legislation is apparent since

---

say about thirty feet wide, and they take half the block up. It's one way south. They load from the pavement. They even block the pavement up when they back up."

[7] Footnote 3, supra.

[8] The character of such use is permitted only in a district zoned "A-Commercial".

[9] Philadelphia Code, as amended, sec. 14-104(1) and (4).

the primary purpose of zoning is to prevent downgrading of neighborhoods.

The record indicates that the use of the premises as a warehouse and storage point for chemical cleaning compounds is of a classification lower than the previous use in the nonconforming garage structure.

See Molnar v. George B. Henne & Co., Inc., 377 Pa. 571 (1954), where the premises in question had been used as a garage prior to the enactment of the zoning ordinance, an "A-Commercial" use and thus a nonconforming use in the residential district in which the premises were situated, and the manufacture of hardware constituted an "industrial area" use. In that case the court held that the said hardware manufacturing did not qualify as a permissible nonconforming use and was therefore violative of the zoning regulations. See also Williams Appeal, 174 Pa. Superior Ct. 570 (1954).

Appellants seek to establish unnecessary hardship to entitle them to a variance, thereby permitting them to utilize the subject premises for warehousing and storage operations. They contend that the building is and has been for some time located in an area which is generally industrial in nature. Further, that since the lease between the respective appellants contains no provision permitting appellant, Udylite Corporation, relief from the obligations of the said lease in the event the use contemplated by the parties should become impaired, and that since appellants were not aware of the zoning classification of the area until after approximately five years of prohibited use, relief should be afforded them by way of a use variance permit. These contentions are wholly without merit and cannot be accepted by this court. See Richman v. Zoning Board of Adjustment, 391 Pa. 254 (1958).

In order to obtain a variance from the terms of a zoning ordinance an applicant must demonstrate (1)

that unnecessary hardship will result if the use is denied, and (2) that the proposed use will not be contrary to the public interest: South Philadelphia Dressed Beef Company v. Zoning Board of Adjustment, 391 Pa. 111 (1958); Richman v. Zoning Board of Adjustment, supra; Volpe Appeal, 384 Pa. 374 (1956); Fagan v. Zoning Board of Adjustment, 389 Pa. 99 (1957); O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379 (1956); Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 503-504 (1954).

The unnecessary hardship must be unique or peculiar to the property for which the variance is sought as distinguished from a hardship arising from the impact of the zoning regulations on the entire district: Smolow v. Zoning Board of Adjustment, 391 Pa. 71 (1958); Michener Appeal, 382 Pa. 401, 406 (1955).

In the case before us the board found: "The property which is the subject of this application has been operated by the applicant corporation for the storage of chemicals and office for sale to manufacturers in violation of the Zoning Ordinance, for approximately five years prior to the date of this hearing, without the benefit of a Use Registration Permit"; "that the property which is the subject of this application, although zoned residential and being used for a use other than residential, is in a block that is predominantly residential"; "that at the time the applicant entered into a lease for the rental of this property, neither its officers nor its counsel inspected the records of the Zoning Division of the Department of Licenses and Inspections to determine whether or not it could be used legally for the storage of chemicals and office for sale to manufacturers, the use sought in this application"; "that the Costics (caustics) which come in 400 pound drums are received by truck-load lots, and the normal quantity of each is 100 drums at a time"; "that the appli-

cant receives daily deliveries of these materials which are delivered to it by means of trailer trucks and smaller type trucks"; "that all loading and unloading is done from the street"; "that Belgrade Street is a narrow street of three car width being approximately 30 feet wide from curb to curb"; "Belgrade Street is a one way street going south"; "that when trailer trucks are delivering their commodities to this property on Belgrade Street, it causes traffic backups and congestion"; "that the trailer trucks and other vehicles making deliveries to the applicant's property back their trucks on the sidewalk, as a result of which pedestrians are forced onto the street in order to traverse in front of applicant's property"; "that property 2818 E. Belgrade Street through to Miller Street is a property zoned residential, which is used for an industrial purpose which is entirely surrounded by residential uses"; "that in 1933, this property was used as a commercial use, namely a garage, for the storage of autos and it can be used for that purpose at the present time."

The zoning board of adjustment refused to grant the requested use variance permit and concluded that appellants failed to demonstrate that the alleged hardship was substantial and of such compelling force as to justify a departure from the strict letter of the zoning regulations, that at the time the respective appellants entered into the lease for the premises they had, or should have had, full knowledge of the zoning status thereof [10] and that no testimony or proofs were submitted by appellants to establish that the building could not be used or adapted for any one of the many different land uses provided for in the classification

---

[10] Devereux Foundation, Inc., Zoning Case, 351 Pa. 478 (1945); Fagan v. Zoning Board of Adjustment, supra.

designated for this nonconforming garage structure.[11]

In addition, the board found that the proposed use would be contrary to the public interest in that the operation of a warehouse and storage point would create hazardous traffic congestion.

The board's findings of fact and conclusions are amply supported by the record.

The scope of review in the instant case is as on certiorari and is therefore limited to our determining whether or not the zoning board of adjustment abused its discretion in refusing to grant the variance requested or committed positive error of law.

A review of the record convinces us that the board properly exercised the discretion vested in it. Nor does it appear from the record that the board committed an error of law.

In Catholic Cemeteries Association of the Diocese of Pittsburgh Zoning Case, 379 Pa. 516, 523 (1954), Mr. Justice Allen M. Stearne, speaking for the court, stated:

"The single question, however, properly before the court below was whether or not the Board of Adjustment, in refusing the variance requested, was guilty of a manifest and flagrant abuse of discretion: Reininger Zoning Case, 362 Pa. 116, 66 A. 2d 225." See also Triolo v. Exley, 358 Pa. 555, 558 (1948).

It is likewise clear that a court of common pleas cannot substitute its judgment for that of the board on questions of fact. See Rowland v. Zoning Board of Adjustment, 2 D. & C. 2d 735.

At the time this matter was argued before the court en banc appellants sought by oral request to be permitted to introduce additional testimony relating to the existence of certain commercial and industrial es-

---

[11] Footnote 8, supra.

tablishments in the general area here involved. Inquiry by the court as to the nature of the proposed evidence disclosed that the same would be directed solely toward uses already existing in the area, either of a nonconforming nature or of a type unlawful and prohibited. It was apparent to us that such evidence would be wholly irrelevant and immaterial and would not warrant our changing the zoning board's findings.

It is well settled that the character of adjoining dwellings of itself cannot constitute the necessary hardship which the law requires in order to obtain a variance. See Reininger Zoning Case, supra.

The question of the effect of other variances granted in an area was raised in the case of Ventresca v. Exley, 358 Pa. 98 (1948), in which the court pertinently stated:

"Plaintiff makes much of the fact that a variance was granted about a year previously for the erection and use of a structure for manufacturing of tools and instruments almost directly across the street from where his proposed garage was to be located; he also presented evidence of variances granted by the board in other residential districts. This evidence should not have been received or, being received, should not have been considered, because the question whether such other variances were properly allowed would necessarily depend upon the circumstances in each case and would therefore have no bearing whatever upon the legality of the certificates involved in the present proceedings: Valicenti's Appeal, 298 Pa. 276, 283, 284, 148 A. 308, 311; Hasley's Appeal, 151 Pa. Superior Ct. 192, 193-195, 30 A. 2d 187, 188, 189."

Furthermore, appellants had ample opportunity to present the proposed additional testimony before the board, but failed to do so. We believe that no useful purpose would be served to allow appellants their be-

lated request. Nor does the record indicate that the zoning board did not permit appellant, Udylite Corporation, to be fully heard.

We accordingly refused the oral request for a rehearing in this matter. See Penn Warwick Garage Co. v. Zoning Board of Adjustment, Court of Common Pleas No. 2 of Philadelphia County, September term, 1956, no. 8186, where this court said:

"It is clear from a reading of this Act (the enabling act of May 6, 1929, P. L. 1551, 53 P. S. 14759) that the primary purpose and intent of the Legislature in authorizing the creation of the Zoning Board of Adjustment was that that Board should hear all the testimony and engage its acquired expertness in the formulation of its decision.

"It follows that only in extraordinary cases, such as where the Board refuses to permit the parties to be fully heard, or misinterprets the relevancy of proffered testimony, thus effectuating an incomplete record, the parties should be permitted to introduce additional testimony in the Common Pleas Courts. (See Silverco, Inc. v. Zoning Board of Adjustment, et al., 379 Pa. 497 (1954)."

The cases of O'Neill v. Philadelphia Zoning Board of Adjustment, supra, and Triolo v. Exley, supra, relied upon by appellants, are readily distinguishable. In the O'Neill case a variance was upheld which allowed the change of a former nonconforming garage structure to a dance studio and residence; obviously in that case, the nonconforming use was being changed to a more desirable use. It was an up-grading of property instead of a down-grading. In the instant case, the requested variance, if granted, would tend to down-grade the neighborhood.

The Triolo case differs from the case before us in that there applicant, in 1939, purchased a building

that was still equipped with hooks and rails used in the abattoir business which had been conducted on the premises for several years prior to 1915. The neighborhood consisted of operations devoted to "Least Restricted" and "Industrial Uses" and during the pendency of the litigation the classification of the districct was changed from "A-Commercial" to "Industrial", and permission therefore to operate "a modernly equipper abattoir" under the circumstances was not regarded as an abuse of discretion by the board. In the instant case, however, the use for which a variance is requested is permitted only in a district classified "General Industrial", and no undue hardship results to appellants by having been refused the variance, inasmuch as at least 25 other uses are available to them under the nonconforming status within the "A-Commercial" zoning classification.

No useful purpose would be served by going into a detailed discussion of the remaining cases cited by appellants in their briefs, since a study of them indicates to us that they also are inapplicable.

Appellants have not made out a case by credible evidence. They have not met their required burden of proof: Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 291 (1956); Volpe Appeal, supra.

The record establishes that the zoning board of adjustment, in refusing to grant the permit in the instant case, did not act in an arbitrary, capricious or unreasonable manner or in clear violation of positive law.

Accordingly, we have dismissed appellants' appeal and have affirmed the decision of the zoning board of adjustment.