# Elkins Park Improvement Association Zoning Case.

Argued January 4, 1949. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

*Morris Gerber,* with him *Wisler, Pearlstine, Talone & Gerber,* for appellant.

*David E. Groshens,* with him *Elvin R. Souder* and *Philip F. Newman,* for Frank H. Powell, appellee.

*Samuel H. High, Jr.,* and *High, Swartz, Flynn & Roberts,* for Board of Adjustment, Cheltenham Township, appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 21, 1949:

This is an appeal from a decree of a court of common pleas affirming the decision of a township board of adjustment granting a variance modifying the *lot area* provided for in a zoning ordinance of the township.

Frank H. Powell, an appellee, is the equitable owner of 3.351 acres or 145,969 square feet of vacant undevel-

oped land located at the northeast corner of High School Road and Montgomery Avenue in Elkins Park, Cheltenham Township, Montgomery County. Under the township zoning ordinance, which is that of 1929, as amended, the premises are zoned Class "B" Residence District. The land is bounded by the following zoned districts: to the southwest across Montgomery Avenue by a district zoned as "F" being a commercial and business district; to the west by an "A" residence district; to the northeast by real estate of the township school district used as an athletic field zoned "AA"; to the south across High School Road by property of the township school district zoned "AA" Residence District. The premises are within two blocks of the Elkins Park Station of the Reading Railroad. It immediately adjoins the business area of Elkins Park.

Article V of the township ordinance, supra, defines Zone "B" as a "Residence District". Sections 500 to 508 of the ordinance relate to regulations for that use. Section 501 provides: "A building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and for no other: 1. A use permitted in AA Residence Districts. . . ." Section 502 provides: "A lot area of not less than seventy-five hundred (7500) square feet per family, the lot having a minimum width of fifty (50) feet, shall be provided for every building hereafter erected, altered or used in whole or in part as a dwelling. . . ." Paragraph 2 of Section 501 permits "Multiple Dwellings when authorized as a special exception."

Appellee (equitable owner) filed an application with the Board of Adjustment requesting, inter alia, (a) a *special exception* to authorize the erection of multiple dwellings and (b) a *variance* to permit a lot area of less than 7500 square feet per family. After a hearing, a majority of the Board of Adjustment (consisting of three members) granted the petition. The Elkins Park

Improvement Association appealed to the court of common pleas. President Judge KNIGHT heard the testimony and made findings of fact and conclusions of law. He dismissed the appeal insofar as it related to the granting of the special exception and the variance herein involved. The court in banc affirmed the chancellor's decree. This appeal followed.

Appellant does not complain of the grant by the Board of a special exception enabling the erection of *multiple dwellings*. The land is unsuited and impractical for single dwellings and its zoning classification prohibits its use for commercial or business purposes. It is conceded that the land is ideally suited for apartment purposes. Indeed it has no other use. The question is whether the Board *abused its discretion* when it granted a *variance* permitting the erection of a multiple dwelling apartment structure with a lot area of but 2750 square feet per family where the ordinance requires "A lot area of not less than seventy-five hundred (7500) square feet per family, *the lot having a minimum width of fifty (50) feet. . . .*" (italics supplied). It is contended that the grant of such variance in effect is *legislative* in character, resulting in the modification or amendment of a township ordinance. Our review of this record convinces us that the decree of the learned court below must be affirmed.

We do not construe the language of Section 502 of Article V of the township ordinance, requiring a lot area of 7500 square feet per family, to pertain to *multiple dwellings* authorized as special exceptions to Section 501. The lot area of 7500 square feet per family in Section 502 specifically refers to a ". . . lot having a minimum width of fifty (50) feet. . . ." The dimensions of such a lot are therefore 50 x 150 feet. Consequently if *single dwellings* for single family occupancy had been erected on this land, each dwelling would require a lot of such dimensions. But such zoning provi-

sions do not apply where a special exception is allowed permitting erection of *multiple dwellings.* The proposed multiple dwelling is a large single building, two stories high, consisting of 25 double units accommodating 50 families. It is built under what is commonly known as the Garden Court Apartment Plan—with a single entrance, the apartments being grouped around a central court or garden.

But even under appellant's construction of the ordinance, the Board of Adjustment may, under peculiar and exceptional circumstances, grant a variance. Zoning ordinances are enacted "For the purpose of promoting health, safety, morals, or the general welfare . . .": Section 1, Act of 1923, June 29, P. L. 957, as amended, 53 PS 15731. By Section 7 of the Act a township may create a Board of Adjustment:

"To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to *special* conditions, a literal enforcement of the provisions of the ordinance will result in *unnecessary hardship*, and so that the spirit of the ordinance shall be observed and substantial justice done." (Italics supplied.)

This Court has defined the status and limitation of authority of a Board of Adjustment under a zoning ordinance. In *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 41 A. 2d 744, Mr. Justice HORACE STERN said, p. 485: "We do not believe that it was the intention of the legislature, nor of the township supervisors, to empower a board of adjustment to set at naught the zoning statute and ordinance under the guise of a variance. The power to authorize such a variance is to be sparingly exercised and only under peculiar and exceptional circumstances, for otherwise there would be little left of the zoning law to protect public rights; prospective purchasers of property would hesitate if

confronted by a tribunal which could arbitrarily set aside the zoning provisions designed to establish standards of occupancy in the neighborhood. Indeed, if such power were to be interpreted as a grant to the board of the right to amend or depart from the terms of the ordinance at its uncontrolled will and pleasure, it might well be challenged as being an unconstitutional delegation of legislative authority to a purely administrative tribunal." See also *Ventresca v. Exley,* 358 Pa. 98, 100, 56 A. 2d 210.

The circumstances motivating the grant of this variance were most peculiar and exceptional. As stated above, the land is unsuited for single family dwellings; its use is limited to apartments; no complaint is made of the grant of a special exception for that use; any number of apartments less than 50 was proven to be impracticable. As stated above, the total area of this land is 145,969 square feet. If a requirement of 7500 square feet per family for each of the 50 apartments is imposed' this would make an area requirement of 375,000 square feet, which is over double the area of the whole tract. In the same ratio, 25 apartments would require 187,500 square feet, still in excess of the lot area. To enforce such an absurd provision would mean that land, which cannot be used commercially and is unsuitable for single dwellings (but ideally adapted for apartments) must remain idle and unsightly, an impediment to civic improvement, an expense to the owner and, possibly, ultimately to the community.

We have examined appellant's objections to the grant of the variance as stated in its petition. None of them relates to "health, safety, morals or general welfare." What appellant fears is the concentration of so many families on the land which will financially burden the township in the maintenance of public schools and police protection. Such considerations cannot be controlling in

the disposition of this case, the consequences suggested being too remote.

We regard an equitable owner (one of the appellees), as possessing a status to petition for a variance and that the strict enforcement of this ordinance, as contended for by appellant, would work an unnecessary hardship upon him.

The decree is affirmed at the cost of appellant.