O'Neill *v.* Philadelphia Zoning Board of Adjustment (et al., Appellant).

380

Argued January 5, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James L. Stern*, Deputy City Solicitor, with him *Matthew W. Bullock, Jr.*, Assistant City Solicitor, and *Abraham L. Freedman*, City Solicitor, for City of Philadelphia, appellant.

*Robert K. Greenfield*, with him *Thomas F. Devine* and *Folz, Bard, Kamsler, Goodis & Greenfield*, for individual appellant, Nadia Chilkovsky.

*John E. Krout*, with him *Drinker, Biddle & Reath*, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 13, 1956:

Appellant, Nadia Chilkovsky, the equitable owner of premises 271 South Van Pelt Street, Philadelphia, under an agreement to purchase, filed an application for a permit with the Zoning Division of the Department of Licenses and Inspections to use the property as a ballet school in conjunction with her private dwelling. The Zoning Division denied the permit because the proposed use was not permitted in the particular district and appellant thereupon appealed to the Zoning Board of Adjustment. After a public hearing at which neighboring property owners appeared both in support of and in opposition to the application, the Board unanimously granted a variance subject to the following conditions: ". . . that entrance to the school shall be from Manning Street [a side street] only; that hours of operation shall be from 9:00 A.M. to 8:00 P.M.; no school operations on Sundays or holidays; also provided that no signs are erected: also, all music to be restricted to one (1) piano or recording only, and no sub-leasing to others for similar or other uses.".

From this decision one of the protestants, Mary F. O'Neill, appellee herein, appealed to the Court of Com-

mon Pleas No. 5 of the County of Philadelphia, pursuant to the Act of May 6, 1929, P. L. 1551, 53 PS §3829. Appellants, Chilkovsky and the City of Philadelphia, were permitted to intervene. The court, as authorized by the Act, took additional testimony and entered an order reversing the Board on the ground that the applicant had not shown the unnecessary hardship prerequisite to the granting of a variance. From this order both Mrs. Chilkovsky and the City have appealed.

The premises in question are situated in a district zoned Residential "F" under the Philadelphia Zoning Ordinance of 1933, as amended, in which district, although the permissible uses are limited essentially to single or multiple family dwellings, hotels, police and fire stations and telephone exchange buildings are also included within that category. From 1927 to September, 1954 the Philadelphia Transportation Company occupied the first floor of the property as a commercial garage for its executives' cars and the second floor was used as a one-family apartment. Inasmuch as this use predated the zoning ordinance by eight years, it was permitted as a nonconforming use. In the same block as the subject premises a number of properties formerly used for commercial purposes have been remodeled and converted into attractive homes which are used exclusively for residential purposes. There are also five commercial uses, consisting of a plumbing supply house, a printer's shop, a piano studio, a floor covering office and a photographic business.

Appellant Chilkovsky, a concert dancing teacher outstanding in her profession, proposed to partition off the first floor in order to use the front portion for her personal car and the rear as a private ballet school for classes of seven or eight children considered specially gifted in this art. She has in fact so used the premises since September 7, 1954, the date of settlement

for the property, under the use registration permit granted by the Zoning Board.

In granting the variance requested the Board found, inter alia, that the proposed use was far less obnoxious than its present use as a garage; that it would in no way affect the peace and quiet of the neighborhood and that the property could not be easily converted into a residence. The court below was of opinion that the Board abused its discretion since the only hardship proved was that the appellant could not occupy the premises as a residence without making expenditures to effectuate a change, and that this did not constitute unnecessary hardship. Since the court heard additional testimony and is empowered under the enabling Act of 1929, supra, to reverse or affirm, in whole or in part, or to modify the decision brought up for review, we examine the record to determine whether the court abused its discretion or committed an error of law: *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914; *Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa. 497, 109 A. 2d 147.

The court's conclusion that the Board abused its discretion was based solely upon the principle that mere financial hardship is not in itself sufficient to warrant a variance and it cited in support thereof *Pincus v. Power,* supra, and *Jennings' Appeal,* 330 Pa. 154, 158, 198 A. 621. In the *Pincus* case the plaintiffs sought a variance in order to erect six two-story structures, the ground floor of each to be used for commercial retail stores, on lots zoned "C" Residential. The plaintiffs claimed (1) if the variance were granted, the value of the property would be increased $31,000 and (2) if and when the street on which the property fronts was widened, the erection of dwelling houses would be unprofitable. In affirming the refusal of a variance by the Zoning Board and the lower court, we held that

the only hardship proved was that the plaintiffs' property would be 400% more valuable if the variance were granted, and the mere fact that a property owner can sell his land at a far higher price if a variance is granted does not constitute unnecessary hardship.

In *Jennings' Appeal* the plaintiffs applied for leave to permit the occupancy of a large residence formerly used for a one-family dwelling as a fraternity house, which use would have enhanced the value of the property, but it was not permitted in a "C" Residential District. We affirmed the refusal of a variance by the Board and the lower court on the ground that the proposed use would be contrary to the public interest and would decrease the value of the neighboring properties.

However, the *Pincus* and *Jennings* cases and the principle annunciated therein do not control or rule the instant case. In *Pincus* the variance sought by the property owners was to obtain a more financially profitable use of their property than that permitted by the zoning restriction. Similarly in the *Jennings* case the variance requested would have enhanced the value of the property. The import of our opinions in the two cases is that where the request is for a change from an existing use consistent with the zoning classification to one inconsistent therewith, the mere fact that the property would increase in value or become more profitable if a variance were granted, is not of itself a sufficient basis for a claim of unnecessary hardship. Here the hardship involved is of a different character. It is the *required* conversion of the premises in question from a nonconforming to a conforming use at very substantial cost, claimed by the appellants to be financially impracticable.

It is well settled that to obtain a variance the petitioner must show that (a) the variance will not be con-

trary to the public interest, and (b) unnecessary hardship will result if it is not granted. We think the appellant owner met both of these requisites.

In view of the court's conclusion that there was no unnecessary hardship, it did not pass on the question whether the proposed use would be contrary to the public interest. Extended discussion on this aspect of the case is unnecessary for common sense would seem to dictate that a ballet school for children is more consistent with the residential character of the neighborhood than the maintenance of a commercial garage. But apart from this, the Board found as a fact that the proposed use is far less obnoxious than its present use as a garage; that it would not create unnecessary noises so as to distract the residents of the surrounding homes; that it would tend to decrease traffic and inconvenience; that the applicant is a recognized authority of the art and should conduct her school in a manner that would in no way affect the peace and quiet of the neighborhood; that the grant of a permit would tend to substitute a better and more desirable use than that for which the building is now used and that the health, morals, safety and general welfare of the immediate neighborhood would not be affected if permission were granted. All of these findings are amply supported by the evidence.

It sufficiently appears from the record which included photographs of the premises, that the conversion of the property into a residence[1] would be inordinately burdensome and costly. As stated in the City Solicitor's brief: ". . . what is involved is the complete rebuilding of at least the interior of the premises. What were once stone floors suitable for large vehicles

---

[1] The second floor of the property has always been used as a residence and this use is not in issue here.

would have to be transformed into wooden floors suitable for occupants. What was once a large entrance suitable for large vehicles to pass through must be replaced by front walls suitable in construction and appearance for a private dwelling. What was once one big open space suitable for the parking of twelve commercial vehicles must be converted to partitioned rooms. What was once a heating system designed merely to satisfactorily house vehicles must be changed to a heating system suitable for the occupancy by people. Plumbing facilities must be installed, electrical equipment must be placed in the walls which are still to be constructed. . .".

While it is true that a board of adjustment may only grant a variance if an alleged hardship is substantial and of compelling force, we are of opinion that the appellants have shown those singular circumstances which justify a departure from the strict letter of the zoning regulations. The Board's discretion is not so circumscribed as to require a property owner to reconstruct a building to a conforming use regardless of the financial burden that would be incident thereto. Especially is this true where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood. Under Section 5-1006(1)(c) of the Philadelphia Home Rule Charter it is the obligation of the Zoning Board of Adjustment to see ". . . that the spirit of the [zoning] ordinance shall be observed and substantial justice done.". We have repeatedly held that the decision of a zoning board should be reversed only where it has flagrantly and manifestly abused its discretion. In the instant case the court below based its decision solely upon the nonexistence of "unnecessary hardship". As before indicated, in our opinion this conclusion was not justified. After a careful re-

view of the proceedings before the Board and before the court, we are satisfied that the court advanced no valid reason for disturbing the Board's exercise of discretion under the circumstances here presented.

Appellee argues that since the appellant purchased the property under an agreement of sale containing an escape clause in the event the proposed use was disallowed, the existence of an unnecessary hardship on her would not warrant the grant of a variance. This contention is untenable. Under our decisions an equitable owner under a conditional contract to purchase stands in the same position as a legal owner in seeking a variance for the same purpose: *Silverco, Inc. v. Zoning Board of Adjustment,* supra, p. 500; *Elkins Park Improvement Association Zoning Case,* 361 Pa. 322, 328, 64 A. 2d 783.

The order of the court below is reversed and the order of the Zoning Board of Adjustment is reinstated at the cost of appellee.

---

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur in the result reached by the majority of the Court but for an entirely different reason. I would hold that a property owner who has a nonconforming use may change such use into a more desirable or less objectionable nonconforming use. Such a principle protects owners of land in their centuries old property rights, establishes a clear guide post for Courts and Zoning Boards, and does not restrict the power of Zoning Commissions to establish, for the health, safety or morals of the people, reasonable zoning laws or regulations.

If, however, the aforesaid principle is not adopted, I disagree with the opinion and the conclusions reached

by the majority and would affirm the Court below on the authority of *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914.

For eight years prior to the Zoning Ordinance which zoned the district Residential "F", the property in question had been used as a one family apartment on the second floor and a commercial garage for executives' cars on the first floor. The only hardship proved was that appellant could not occupy the entire premises as a residence without expending money to effectuate a change. This certainly did not constitute unnecessary hardship under any prior definition or decision of this Court.

In *Pincus v. Power,* 376 Pa., supra, plaintiff, whose property was zoned "C" Residential, sought a variance to erect six two-story structures on his large vacant land, the ground floor of each to be used for commercial retail stores, while the second floor was to be used as an apartment for a single family dwelling. Under "C" Residential zoning, the land could be used for detached or semi-detached dwellings or multiple dwellings. The side of Stenton Avenue opposite plaintiff's property was completely occupied by stores. If the variance were granted, plaintiff's property would be 400% more valuable; and if it was not granted it would be unprofitable to erect dwelling houses on lots having a depth of only 86 feet.* This Court held (1) "Mere hardship is not sufficient; there must be unnecessary hardship", and (2) a large increase in the value of property is not sufficient to constitute unnecessary hardship or justify a variance. There is no material difference and certainly no legal difference between *Pincus v. Power* and the instant case. In each case the

---

* When Stenton Avenue became a state road.

property owner desired a change of use or variance in order to make more money.

The majority point out that it would cost plaintiff a substantial amount of money to convert part of her nonconforming use property to a conforming use property. That is not special to this case; it is always true where a change or variance is sought from zoning ordinances and proves exactly nothing. Property rights are always impaired, restricted and substantially reduced by zoning ordinances—for the (alleged) benefit of the health, safety or morals of the public—and residential zoning ordinances almost always cost the property owner money in one way or another. Plaintiff in this case could legally and readily convert her home and property into a single dwelling or into a detached or semi-detached or multiple dwelling, or erect one of these dwellings on her vacant ground. Of course, this would cose her money, just as a conversion to a nonconforming use would cost her money, but, we repeat, this has never heretofore been considered "unnecessary hardship". Furthermore, if the City is an aggrieved party with a right to appeal, it can achieve the result it desires, easily and simply, by amending the ordinance to specifically allow (a) exceptions, including ballet schools, or (b) changes from a nonconforming use to a more desirable or less objectionable nonconforming use.

The present, majority opinion implies, without deciding, that there is one test of unnecessary hardship for a zoned property and another test of unnecessary hardship for a nonconforming use property. Zoning problems and property rights and limitations thereunder have for years been floating about in a sea of uncertainty. We have attempted to erect beacons, channel buoys and boundaries to enable commissions and property owners to safely chart their course; and

we have given Boards of Adjustment and Courts standards to guide them in the difficult task of reconciling the often conflicting interests of property owners who desire no change, with the interests of an expanding population who demand a commercial or different kind of community than the neighbors desire. The majority opinion, in my judgment, unfortunately befogs the channel buoys recently erected and covers the navigator with confusion; today no one can tell what constitutes unnecessary hardship and what does not.