## Cleaver Appeal

484

*MacElree, Platt & Marrone*, for appellant.
*Gawthrop & Greenwood*, for respondents.
*Thomas A. Riley*, for Board of Adjustment.

*Opinion*

GAWTHROP, P. J. March 10, 1961.—Appellants have appealed from the decision of the Zoning Board of Adjustment of Tredyffrin Township sustaining the issuance of a permit for construction of certain group apartment buildings in a part of said township classified as an R-4 residence district under the zoning ordinance and map of the township, as amended. No testimony was taken in this court and the matter is now before us for determination of the question whether the board manifestly abused its discretion or committed error of law: Lance Appeal, 399 Pa. 311.

Manor Real Estate Company, a subsidiary of Pennsylvania Railroad Company, formerly owned a tract of land containing approximately 11 acres situate in Paoli, Tredyffrin Township, zoned in an R-3 residence district, abutting on the south side of Central Avenue, bounded on the east by lands of Burroughs Adding Machine Company, on the south by the right of way of the main line of Pennsylvania Railroad and on the west by lands of Tredyffrin School District's Paoli Elementary School. The premises, improved with a stone and frame main building, another frame build-

ing and certain outbuildings, were formerly the property of Devereux Schools. Conestoga Enterprises, Inc., is the purchaser under agreement of sale from Manor Real Estate Company of the northeasterly portion of its tract with the buildings, containing 6.732 acres, bounded on the north by the center line of Central Avenue for a distance of 681.77 feet, on the east by lands of Burroughs and on the south and west by the remainder of Manor Real Estate Company's lands out of which Conestoga's tract comes. Use of land for apartments is not permitted in R-3 residence districts. In December 1959, Conestoga, as equitable owner, petitioned the board of supervisors to reclassify its tract of 6.732 acres from an R-3 to an R-4 residence district. At that time, use of land for apartment houses was permitted in R-4 residence districts but its use for groups of apartments was not.

The Burroughs premises are zoned C-1 commercial district. Manor Real Estate Company's remaining lands, the Paoli Elementary School tract, and the properties north of Central Avenue facing Conestoga's premises and others to the north thereof are zoned R-3 residence district. Paoli Station of the Pennsylvania Railroad Company is a short distance to the west of Conestoga's premises and those of the elementary school. Route 202 abuts the east side of the Burroughs property which lies immediately east of Conestoga's tract. To the west of the elementary school premises there is a C-1 commercial district on both the east and west sides of North Valley Road, extending northward from the railroad and its Paoli station to Central Avenue and eastward along the north side of the railroad to Fennerton Road.

Before enactment of ordinance no. 117 on June 6, 1960, apartments were a permitted use in R-4 residence districts but group type apartments were not. By ordinance no. 117, group type apartments became

a permitted use in R-4 districts. Thereafter, on June 27, 1960, the board of supervisors enacted ordinance no. 123 reclassifying Conestoga's tract as an R-4 district after consultation with and advice from the township planning commission and after public hearing held May 16, 1960, on the proposed reclassification.

Conestoga then applied for and obtained a building permit for construction of 124 garden-type group apartments. Appellants appealed to the zoning board of adjustment from the grant of the permit and attacked ordinance no. 123 reclassifying Conestoga's lands as being unlawful, discriminatory and beyond the powers of the board of supervisors to adopt on the ground that it constituted spot zoning, that it was not adopted in accordance with a comprehensive plan and that it was not adopted in compliance with the applicable requirements of The Second Class Township Code.

After hearing, the board of adjustment filed its decision sustaining the issuance of the permit and dismissed the appeal. From that decision, appellants have appealed to this court raising two questions: First, they assert that the present situation is controlled in their favor by the rule of Eves v. Zoning Board of Adjustment, 401 Pa. 211, and that ordinance no. 123 was not enacted in accordance with a comprehensive plan but was arbitrary, capricious, an abuse of their discretion and amounted to spot zoning, and, second, that the evidence they offered before the board of adjustment, admitted over objection, consisting in the main of minutes of meetings of the board of supervisors and of the township planning commission, the testimony of two witnesses concerning conversations held with individual members of the board of supervisors, Conestoga's petition for rezoning, and an agreement between the builder and the township

imposing certain limitations on the use of the property for construction of group apartments was competent, relevant and admissible and demonstrates the invalidity of the amendment. Conestoga, on the other hand, asserts that appellants are not "persons aggrieved or affected" under article XX, sec. 2007, of the Act of May 1, 1933, P. L. 103, as amended, 53 PS §67007(d), by any provision of the ordinance and have no standing in the matter; that even if they are "persons aggrieved or affected", they have not made out a case; that much of the evidence offered was incompetent, irrelevant and inadmissible; that the opinion of the township planning commission furnished to the board was advisory only and not controlling upon the board, and, finally, that appellants have failed to show that the amending ordinance was not adopted in accordance with a comprehensive plan and, therefore, the Eves case is not controlling.

In the absence of evidence of its ownership of property in the township or of its authorized agency for some property owner, Valley Hills Civic Association is not a "person aggrieved or affected": Putney v. Abington Township, 70 Montg. 102, 107; Schaeffer Appeal, 7 D. & C. 2d 468. It seems equally clear that the individual owners of properties situate on the north side of Central Avenue opposite the premises in question and in the nearby area to the north of Central Avenue are "persons aggrieved or affected": Junge's Appeal (No. 2), 89 Pa. Superior Ct. 548; White v. Old York Road Country Club, 318 Pa. 346; Elkins Park Improvement Association Zoning Case, 361 Pa. 322; Silverco, Inc., v. Zoning Board of Adjustment, 379 Pa. 497.

Although the cases cited immediately above dealt not with attacks upon amendments to zoning ordinances but, on the contrary, with matters of variance

or special exception, there appears to be no sound distinction which would give standing as a "person aggrieved" to a neighboring owner in the one situation and not in the other. The Supreme Court of Connecticut has held that a neighboring owner and resident is "aggrieved" and has status as a protesting party against a change of zoning classification from agriculture to business; Mills v. Town Plan and Zoning Commission of Town of Windsor, 145 Conn. 237, 140 A. 2d 871. Our own courts having held such owners to be "persons aggrieved" in matters of variance and special exception, we have no doubt the individual appellants are of equal status in a matter involving a change in the comprehensive plan by reclassifying an area from one type of district to another. We therefore hold that they are "persons aggrieved or affected" by the granting of the permit and the enactment of the amending ordinance.

As we understand their argument, appellants do not attack the constitutionality of the ordinance. It is, of course, presumed to be constitutional and one attacking it would bear a heavy burden: Bilbar Construction Co. v. Easttown Twp. Board of Adjustment, 393 Pa. 62. Their attack is based upon its invalidity as spot zoning and on failure to act in accordance with a comprehensive plan, citing Eves v. Zoning Board of Adjustment, 401 Pa. 211. In support of their attack, they offered in evidence, and there were admitted over objection, Conestoga's petition for reclassification of its tract, copies of minutes of the board of supervisors and of the township planning commission, conversations with individual supervisors after adoption of the ordinance, the report of the planning commission to the supervisors, an agreement between Conestoga and the board of supervisors limiting and restricting the manner and character of use of the tract in question, and a draft of a proposed ordinance, under consideration

but not enacted, designed to establish a new R-5 residence district for establishment of a comprehensive apartment house district classification upon which a public hearing was held on June 1, 1960, but no definitive action taken. From this evidence they argue that the enactment of ordinance no. 123, reclassifying Conestoga's property, was arbitrary, unreasonable, discriminatory and contrary to law. The question arises whether that evidence was relevant and admissible and whether, if admissible, it sustains the attack upon the ordinance and the permit issued thereunder.

The validity of ordinance no. 123 cannot be tested by the motives of the individual supervisors or the circumstances under which they acted, provided they proceeded regularly within the scope of their powers to accomplish a lawful purpose: The Borough of Freeport v. Marks, 59 Pa. 253; Commonwealth v. Moir, 199 Pa. 534. The legality of the acts of legislative or corporate bodies cannot be tested by the motives of individual members or the adventitious circumstances they may lay hold of to carry out their measures, and evidence offered to support a showing of improper motive is not admissible: Pottsville Borough v. Pottsville Gas Company, 39 Pa. Superior Ct. 1, 3. The exception to the rule is where fraud or bad faith on the part of the legislators themselves is proved: Rathkopf, The Law of Zoning and Planning, vol. 1, ch. 52-3; Pickarski v. Smith, 153 A. 2d 587 (Del.) ; Smith v. Morgan, Commissioner, 4 N. Y. S. 2d 837, affirmed 278 N. Y. 667, 16 N. E. 2d 394. In fairness to the members of the board of supervisors, there is no evidence whatever in this record of fraud or bad faith on the part of any member in enacting the ordinance.

But while courts generally will not inquire into motive, they will permit inquiry into the purpose of

legislation as distinguished from motive of the legislators, particularly where a claim of discriminatory, unreasonable or spot zoning is made: Rathkopf, supra, vol. 1, ch 52-6. In such circumstances, evidence to show the purpose, object, reason, necessity and effect of an ordinance will be admitted where the factors bearing upon its reasonableness are not manifest on its face: Clary v. Borough of Eatontown, 41 N. J., Super. 47; 124 A. 2d 54; Reformed Church of Mile Square v. City of Yonkers, 185 N. Y. S. 2d 983; N.A.A.C.P. v. Patty, 159 F. Supp. 503.

Under The Second Class Township Code of May 1, 1933, P L. 103, as amended, land may be classified for designated uses only in an orderly manner in accordance with a comprehensive plan: Best v. Zoning Board of Adjustment, 393 Pa. 106; Eves Case, supra, page 215. The exercise of the power must have a substantial relation to the public good within the spheres held proper: White's Appeal, 287 Pa. 259. Consequently, any competent evidence as to the purpose of legislation reclassifying any area is relevant and admissible in determining whether the reclassification is arbitrary, discriminatory or unreasonable. On that basis, the legislative history of adoption of ordinance no. 123 may properly be considered, excluding hearsay and other incompetent evidence.

When Conestoga petitioned for reclassification of its 6.732 acres, the remainder of Manor's lands, containing about four acres, was not involved in the proposed change. Although bounded on the east by Burroughs' premises, zoned C-1 commercial district, and on the south by the main line of Pennsylvania Railroad, Manor's remaining land continues to be classified R-3 residence district. It consists of an L-shaped strip of land. Its vertical portion is 70 feet wide and about 458 feet long, extending from the middle of Cen-

tral Avenue southward to Conestoga's southwest corner, lying between the latter's lands and the elementary school tract; its horizontal portion, forming the foot of the L, is about 216 feet wide and about 650 feet long, lying between Conestoga's south boundary and the railroad and running from the elementary school tract on the west to Burroughs' property on the east. All lands in the vicinity of Conestoga's property to the north of Central Avenue and much of those west of the elementary school tract continue to be in R-3 residence district as far west as the C-1 commercial area abutting the east side of North Valley Road and bordering the north side of the railroad west of Fennerton Road near Paoli station.

The western and southern boundaries of the new R-4 residence district are established in Conestoga's property lines. No road or street marks those boundaries and the character of the adjoining lands and their fitness for use are no different from Conestoga's premises. Most of the surrounding area has the same general characteristics and is essentially similar. There is no evidence that Conestoga's tract is unfit for use for detached dwellings or other uses permitted in R-3 districts. The reclassified tract is made an island surrounded on three sides by other lands in an R-3 district and on the fourth side by a C-1 commercial district.

The character of the surrounding areas, the disregard of the planning commission's recommendation and the additional limitations on use of the rezoned premises imposed by the agreement dated June 17, 1960, between Conestoga and the township, executed 10 days before enactment of ordinance no. 123, point to the devotion of a comparatively small area to a use inconsistent with the uses to which most of the surrounding area is restricted and to a reclassification

made for the sole benefit of the private interests of the owner rather than for the public good. While appellants have no vested rights in the previously existing classification which would prevent the township from reclassifying an area by amendment under appropriate circumstances (Hollearn v. Silverman, 338 Pa. 346), the reclassification made by ordinance no. 123 is more nearly analogous to rezoning of a smaller lot for a specific purpose, as occurred in Huebner v. Philadelphia Saving Fund Society, 127 Pa. Superior Ct. 28, and DeBlasiis v. Bartell and Oliveto, 143 Pa. Superior Ct. 485, than to the circumstances appearing in Boyle Appeal, 179 Pa. Superior Ct. 318, and Gratton v. Conte, 364 Pa. 578. In the Boyle case, the tract was swampy and inappropriate for residential use in its original classification; in the Gratton case, the land was unsuited by topography for detached private dwellings except at prohibitive cost which would deter any developer. Evidence of that character is lacking here and the cases are distinguishable.

An amendment to a zoning ordinance must be enacted in conformity to the grant of power in the enabling statute to the same extent as the original ordinance, and, if it conflicts with the enabling statute, it is void: Putney v. Abington Township, 176 Pa. Superior Ct. 463. What ordinance no. 123 accomplished, when enacted in conjunction with the companion ordinance no. 117, which for the first time relaxed apartment limitations in R-4 districts to accommodate group type apartments, was substantially to reclassify an individual property for the specific purpose of group-type apartments. Such action taken by the supervisors, while at the same time they had under consideration another ordinance designed to establish a new R-5 residence district providing for a comprehensive apartment house classification, in our view amounted to arbitrary, unreasonable and discriminatory reclas-

sification and improper spot zoning and not to rezoning in accordance with a comprehensive plan or with reasonable relation to public health, safety, morals or general welfare.

"The legislative intention in authorizing comprehensive zoning is reasonable uniformity within districts having in fact the same general characteristics and not the marking off, for peculiar uses or restrictions of small districts essentially similar to the general area in which they are situated. Accordingly, an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district. A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning": 8 McQuillin, Municipal Corporations, §25.83.

This case differs from the Eves case, supra, in that ordinance no. 123 does, in itself, establish simultaneously with its enactment the boundaries of the new R-4 district and notice thereof is given to other property owners. Nevertheless, the ordinance does not satisfy the comprehensive plan requirement contained in the enabling act and consequently is invalid. Therefore, in dismissing the appeal from the issuance of the building permit and thereby sustaining the validity of ordinance no. 123, the Board of Adjustment of Tredyffrin Township committed an error of law requiring a reversal of its decision.

The decision of the Zoning Board of Adjustment of Tredyffrin Township, sustaining validity of the building permit issued to Conestoga Enterprises, Inc., is reversed.