## Andress, Appellant, *v.* Zoning Board of Adjustment.

78.

Argued November 16, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

reargument refused March 28, 1963.

*Robert G. Hess*, with him *Howland and Hess*, for protestants, appellants.

*Matthew W. Bullock, Jr.*, Assistant City Solicitor, with him *Carl K. Zucker*, Assistant City Solicitor, *James L. Stern*, Deputy City Solicitor, and *David Berger*, City Solicitor, for Zoning Board of Adjustment, appellee.

*Jerome B. Apfel,* with him *Blank, Rudenko, Klaus & Rome,* for applicant, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 21, 1963:

This is an appeal from an Order of the Court of Common Pleas which, without taking testimony, affirmed the decision of the Zoning Board to grant a variance for the erection of an apartment house.

Appellee, C M C Construction Company, a land development company (hereinafter called "C M C") purchased the parcel of land here involved at the same time that it purchased three neighboring (but not contiguous) parcels in 1956. The lot in question is zoned "A" Residential. It has the shape of a trapezium.* Although its frontage on Verree Road is 395 feet, its maximum depth is only 90 feet,** and its area is approximately 19,000 square feet. To the rear is a Philadelphia Electric Company's right-of-way (for high tension wires) which it acquired in 1942.

C M C applied to the Zoning Board of Adjustment for (1) a variance to erect on these premises *a sixteen unit,* two story, "V" shaped *apartment* and (2) a variance with respect to rear yard and side yard minimum requirements. The Board, after a hearing, granted the variance because compliance with the "A" Residential provisions of the Zoning Ordinance created inherent hardship in the use of this property. Moreover, because of the irregular size and shape of this vacant lot and because of the front and rear yard minimum open space requirements of the ordinance, a single

---

* A trapezium is "(a) any rectilinear quadrilateral plane figure not a parallelogram, and (b) a quadrilateral plane figure of which no two sides are parallel." The American College Dictionary (1960).

** Some testimony shows 95 feet, other testimony 97 feet.

family dwelling cannot be profitably built thereon, unless a variance for open space requirements is granted.

This property is in an "A" Residential District. Single-family dwellings and many other kinds of buildings are allowed in this district, but these permissive buildings do not include an apartment house.

Since no testimony was taken in the Court below, the test on appeal to this Court is whether the Zoning Board of Adjustment clearly abused its discretion or committed an error of law: *Brennen v. Zoning Board of Adjustment,* 409 Pa. 376, 187 A. 2d 180; *Poster Advertising Company, Inc. v. Zoning Board of Adjustment,* 408 Pa. 248, 251, 182 A. 2d 521; *Valley Forge Industries, Inc. Appeal,* 406 Pa. 387, 177 A. 2d 450; *Spadaro v. Zoning Board of Adjustment,* 394 Pa. 375, 147 A. 2d 159; *Freed v. Power,* 392 Pa. 195, 139 A. 2d 661; *Moyerman v. Glanzberg,* 391 Pa. 387, 138 A. 2d 681. "Error of law" is used in its broad sense and includes questions of "Constitutionality."

In order to determine these questions we shall summarize the evidence which in some important respects is not sufficiently clear or definite. The evidence indicates that *if a variance* with respect to front yard set-back and back yard open space requirements were granted, one or two single family dwellings could be built on this irregular parcel of ground. It is not absolutely clear whether a dwelling erected thereon could be sold for as high a price as the attractive homes in that neighborhood.*

Fifty-two neighbors protested the grant of a variance to erect the proposed apartment house (1) be-

---

* In lieu of testimony, there was confusing colloquy between counsel as to whether a one-family dwelling could be built on this lot with or without a variance for front and rear yard open area requirements, and whether such a home could be built to sell at a profit. Homes in that neighborhood cost between $20,000 and $40,000.

cause a single-family dwelling *could* be built on the premises* and (2) because an apartment house (a) would greatly change the character of the neighborhood and (b) would greatly increase congestion, density of population and school taxes, and (c) would be contrary to the public safety and general welfare. The protestants likewise contended that if a large apartment house can be built on this lot, so can a residence, and the fact that an apartment house would be more profitable will not justify a variance.

Because of the existing confusion on the subject, we deem it wise to briefly summarize the Constitutional boundaries which should guide legislators, planning commissions and zoning boards, and restate certain pertinent principles which apply in zoning matters.

In *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587, the Court said (page 58) : " 'The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful,** and to conserve the property values as

---

* In lieu of testimony, there was confusing colloquy between counsel as to whether a one-family dwelling could be built on this lot with or without a variance for front and rear yard open area requirements, and whether such a home could be built to sell at a profit. Homes in that neighborhood cost between $20,000 and $40,000.

** Planning is certainly wise but it is not, as some zealous advocates believe, something new. These proponents talk and act as if it were something as novel as the science of space and, they as wise as Solomon. Planning is as old as the hills. Hannibal, Alexander the Great, Genghis Khan, Napoleon, Wellington, Washington, Grant, Lee, Eisenhower, and nearly all the great Generals of history planned their campaigns and battles. Business men plan in advance their inventories and future business; every great doctor plans a serious operation; every able lawyer plans the trial or argument of important cases; housewives plan their meals and their day. Nevertheless, planning has become a fetish which in

well as the "tone" of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish.' "*

The rights of property owners and the limitations of Government may be thus summarized:

1. Our State and Federal Constitutions ordain, protect and guarantee *the ownership and use of private property.* United States Constitution Amendment V; Article I, §§1, and 10 of the Constitution of Pennsylvania.

2. The Constitutionally ordained right of private property and freedom of speech, freedom of the press, freedom of religion, and other Constitutionally granted rights, are not absolute: *Times Film Corp. v. Chicago,* 365 U. S. 43; *Poulos v. New Hampshire,* 345 U. S. 395; *Beauharnais v. Illinois,* 343 U. S. 250; *Dennis v. United States,* 341 U. S. 494; *American Communications Assn. v. Douds,* 339 U. S. 382; *Wortex Mills, Inc. v. Textile Workers Union of America, C.I.O.,* 369 Pa. 359, 85 A. 2d 851. These rights and freedoms are subject to the paramount right of the Government to reasonably regulate and restrict, under a reasonable and nondiscriminatory exercise of the police power, the use of property, whenever necessary for the public health,

too many instances is carried to extremes, with little or no consideration given to the constitutionally ordained rights of property owners, or to the possible lack of judgment and vision of the temporary planners.

\* As Mr. Justice WILLIAM J. BRENNAN, JR., in an address at the Bellevue-Stratford Hotel, Philadelphia, on November 24, 1962, before the National Council for the Social Studies aptly said: "As Government acts ever more deeply on those areas of our lives once marked 'private,' there is even greater need to see that individual rights are not curtailed or cheapened in the interest of what may temporarily appear to be in the 'public good.' "

safety, morals and general welfare: *Euclid v. Ambler Realty Co.*, 272 U. S. 365; *Medinger Appeal*, 377 Pa. 217, 221, 104 A. 2d 118.

3. Neither the Executive nor the Legislature, nor any legislative body, nor any zoning or planning commission, nor any other Governmental body has the right —under the guise of the police power, or under the broad power of general welfare, or under the power of Commander-in-Chief of the Armed Forces, or under any other express or implied power—*to take, possess or confiscate private property for public use or to completely prohibit or substantially destroy the lawful use and enjoyment of property, without paying just compensation therefor: Griggs v. Allegheny County*, 369 U. S. 84; *United States v. Causby*, 328 U. S. 256; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U. S. 579; *Lord Appeal*, 368 Pa. 121, 130, 81 A. 2d 533; *White's Appeal*, 287 Pa. 259, 134 A. 409; *Sansom Street. Caplan's Appeal*, 293 Pa. 483, 143 A. 134; *Miller v. Beaver Falls*, 368 Pa. 189, 196, 82 A. 2d 34; *Rolling Green Golf Club Case*, 374 Pa. 450, 453, 97 A. 2d 523; *Medinger Appeal*, 377 Pa., supra; *Archbishop O'Hara's Appeal*, 389 Pa., supra; *Griggs v. Allegheny County*, 402 Pa. 411, 414, 168 A. 2d 123.*

4. It has been difficult and at times impossible to sharply or clearly draw the dividing line between valid or constitutional zoning on the one hand and illegal or unconstitutional zoning on the other hand, i.e., a taking of property, with respect to the entire district zoned or with respect to a particular property.

Article I, §1 of the Constitution of Pennsylvania provides: "All men . . . have certain inherent and indefeasible rights, among which are those . . . of acquiring, possessing and protecting property . . . ." It is today often forgotten by legislative or zoning bodies

---

* Reversed on another point in *Griggs v. Allegheny County*, 369 U. S., supra.

or planning commissions that this inherent and indefeasible right of ownership and possession of private property includes the right to *use* property, otherwise the right would be meaningless. In *Miller v. Beaver Falls*, 368 Pa., supra, the Court said (pages 196, 197-198) : " 'The governing principle is accurately stated in 20 Corpus Juris, 566, "There need not be an actual, physical taking, but any destruction, restriction or interruption of the common and necessary use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property." '

. . .

"As the Court of Appeals of New York, in Forster v. Scott, 136 N.Y. 577, . . . in a case involving a statute . . . which it held to be 'in conflict with the provisions of the Constitution for the protection and security of private property' so aptly said 'What the legislature cannot do directly it cannot do indirectly, as the constitution guards as effectually against insidious approaches as an open and direct attack. *Whenever a law deprives the owner of the beneficial use** and free enjoyment of his property, or imposes restraints upon such use and enjoyment that materially affect its value, without legal process or compensation, *it deprives him of his property, within the meaning of the constitution.* *All that is beneficial in property arises from its use and the fruits of that use,* and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession. It is not necessary, in order to render a statute obnoxious to the restraints of the constitution, that it must, in terms or in effect, authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment, or the power of disposition at the will of the owner.'

---

* Italics throughout, ours.

"As Mr. Justice HOLMES said in his opinion in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 415, (in which he declared the Kohler Act of May 27, 1921, P. L. 1198 unconstitutional) : 'The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. . . . When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.'

" 'While such regulations may not physically take the property, they do so regulate its use as to deprive the owner, of a substantial right therein without compensation. "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416.' "

The fundamental rights of ownership of private property, freedom of speech, freedom of religion, and freedom of the press, are the Hallmarks of Western Civilization. These four basic Freedoms constitute the fundamental differences which distinguish—and create the great impassable gulf which divides—Western Civilization from Communism and free peoples from peoples who are ruled by a despotic dictator or by an absolute or totalitarian form of Government.

The rights of an owner of property and the test of validity and constitutionality of zoning legislation are clearly summarized in *Colligan Zoning Case*, 401 Pa. 125, 162 A. 2d 652, and in *Volpe Appeal*, 384 Pa. 374, 121 A. 2d 97. In *Colligan Zoning Case* the Court said (page 131) : ". . . In Medinger Appeal, 377 Pa. [supra]

the Court [quoting from Lord Appeal, 368 Pa. 128] said (page 221) : ' ". . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations *which are constitutional.* It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property: [citing many decisions of this Court and of the Supreme Court of the United States]." ' "

In *Volpe Appeal,* supra, the Court said (page 377) : "Municipalities have power to zone land for residential purposes and to establish minimum lot requirements in connection therewith, provided they are reasonable for the residential districts involved and bear a reasonable relation to the health and safety [morals and general welfare] of the community . . . municipalities may, without violating the Constitution, exclude from residential districts,—for reasons of health and safety— business and trade of every sort, including hotels and apartment houses: Village of Euclid v. Ambler Realty Co., 272 U. S. 365; Ward's Appeal, 289 Pa. 458, 137 A. 630; Jennings Appeal, 330 Pa. 154, 198 A. 621. See also: Brosnan's Appeal, 330 Pa. 161, 198 A. 629 and Elkins Park Improvement Assn. Zoning Case, 361 Pa. 322, 64 A. 2d 783."

In order to avoid a "taking" and at the same time to sustain the Constitutionality of an Act or an ordi-

nance, the law permits under certain circumstances, a variance. A variance because of unnecessary hardship which is peculiar to a particular property, is the recognized and approved legal device by which the basic constitutional right of private property is reconciled with the paramount right of Government to protect by zoning and/or otherwise the public health, safety, morals and general welfare.

In *Brennen v. Zoning Board of Adjustment,* 409 Pa., supra, the Court said: " 'In order to establish a right to a variance an applicant must prove (1) unnecessary hardship upon and which is unique or peculiar to the applicant's property, as distinguished from the hardship arising from the impact of the Zoning Act or regulations on the entire district; and (2) that the proposed variance is not contrary to the public safety, health, morals or general welfare: Ferry v. Kownacki, 396 Pa. 283, 152 A. 2d 456; Moyerman v. Glanzberg, 391 Pa. 387, 397, 138 A. 2d 681; Michener Estate, 382 Pa. 401, 406, 115 A. 2d 367.' "

It is well settled that a variance will not be granted on the grounds of economic hardship alone: *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280; *Magrann v. Zoning Board of Adjustment,* 404 Pa. 198, 170 A. 2d 553; *Pincus v. Powers,* 376 Pa. 175, 101 A. 2d 914; *Spadaro v. Zoning Board of Adjustment,* 394 Pa., supra; *Upper St. Clair Township Grange Zoning Case,* 397 Pa. 67, 152 A. 2d 768. This is especially so when a person buys with knowledge of the economic hardship. In such a case *the general rule* is that the owner cannot complain thereof and assert such hardship as a basis for obtaining a variance: *Lally Zoning Case,* 404 Pa. 174, 171 A. 2d 161; *Cresko Zoning Case,* 400 Pa. 467, 162 A. 2d 219; *Upper St. Clair Township Grange Zoning Case,* 397 Pa. 67, 152 A. 2d 768.

The distinction between what is valid zoning and what is unconstitutional zoning, is difficult to more

clearly define. In the leading case of *Euclid v. Ambler Realty Co.,* 272 U. S., *supra,* the Court said (page 387) :

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities."

In *United States v. Central Eureka Mining Co.,* 357 U. S. 155, where the War Production Board issued an order requiring non-essential gold mines to cease operation for the purpose of conserving equipment and man power for essential war uses, the Court held the owners were not entitled to compensation for a "taking" and said (page 168) : "Traditionally, we have treated the issue as to whether a particular governmental restriction amounted to a constitutional taking as being a question properly turning upon the particular circumstances of each case. See Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416. In doing so, we have recognized that *action in the form of regulation can so diminish the value of property as to constitute a taking.* E.g., United States v. Kansas City Ins. Co., 339 U. S. 799; United States v. Causby, 328 U. S. 256. However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation." See to the same effect *Bowles v. Willingham,* 321 U. S. 503, 518.

The line of demarcation is illustrated by *Haas v. Zoning Board of Adjustment,* 403 Pa. 155, 169 A. 2d 287, and *Ferry v. Kownacki,* 396 Pa. 283, 152 A. 2d 456, which were relied upon by the lower Court. In

the *Haas* case this Court affirmed the grant of a permit to use the property in question for a convalescent home. Such a home was one of the uses permitted in this area which was zoned "A" Residential. The Board at the same time granted a variance with respect to the rear yard open space requirements, because the irregular shape of the property made it wholly impractical to build *any kind of a structure* thereon unless a variance was granted. For these reasons the *Haas* case is clearly distinguishable.

*Ferry v. Kownacki* was an unusually exceptional case. In that case this Court affirmed the grant of a variance and allowed the erection of a gasoline station which was prohibited in this Residential-3 district, for each of two reasons: (1) the terrain with its deep ravine and gulley, open septic tank areas, etc., made the property impossible for residential purposes, and (2) there was no market for it for residential purposes.* The Court said that the case "certainly stands on its own bottom."

If a variance could not be granted for the open space requirements for a dwelling house or for one of the building uses permitted in this "A" Residential zone, or failing that, for the proposed apartment house, the ordinance as to this property would be confiscatory, unconstitutional and absolutely void. The evidence which was very slight (plus the colloquy of the lawyers which was confusing) was not sufficiently definite and clear to enable this Court to decide the issues hereinabove discussed. For this reason, the Order of the lower Court is reversed without prejudice to the right of the owner of the property to apply for a "ground" variance for the erection of a dwelling house

---

* The Court also said: "The fact that an increase or decrease in value will result from the grant or refusal of a variance will not, standing alone, constitute a sufficient hardship." Accord many cases, supra.

or houses, or for a permit for the erection of one of the other buildings permitted by the Zoning Ordinance; or to reapply for a variance for the proposed apartment house if the applicant can establish that the erection of a dwelling house or other building authorized in this "A" Residential district is to all intents and purposes so impractical, even with an appropriate ground variance, as to completely prohibit or substantially destroy the lawful use of this property.

Order reversed, without prejudice.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I do not disagree with the majority's summary of "the Constitutional boundaries which should guide legislators, planning commissions, and zoning boards," although I fail to understand how these truisms are necessary or helpful to a determination of the issues before us. I do dissent, however, from the result reached by the majority in this case, especially since it has failed to provide any guidelines for further proceedings before the zoning board.

My reading of the record makes it abundantly clear that the zoning board correctly applied the "Constitutional boundaries" set forth in the majority opinion. This is a classic case of an unnecessary hardship which is unique to the particular property in question, and one where the public health, safety, or general welfare will not be adversely affected by the grant of a variance. The majority apparently does not dispute that a variance should be granted. It feels, however, that a different type of variance than the one requested would be more desirable. The majority thus purports not only to act as a super-zoning board, but also to inject issues not before us. The only question before us on this appeal is whether the variance requested was properly granted. I would hold that it was.

I must therefore dissent.