## Board of Adjustment *v.* Bomgardner, Appellant.

Argued May 28, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert H. Maurer,* for appellants.

*Spencer G. Hall,* City Solicitor, with him *James S. Bowman,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 27, 1963:

Appellants seek a zoning variance for a parcel of land at the northwest corner of 17th and Berryhill Streets in Harrisburg. This parcel consists of a large dwelling facing 17th Street, five contiguous vacant lots, each sixteen feet wide, and another residence fronting on Berryhill Street. The property is situated in an area designated in the zoning ordinance (approved October 3, 1950) as R-5, the least restrictive residential classification. Permission was sought to use the real estate for the erection and operation of a gasoline service station, a purpose not authorized by the ordinance classification for this zone.[1]

The board of adjustment refused to grant the variance.[2] On appeal to the Court of Common Pleas of

---

[1] The ordinance (section 12, subsection 14) permits gasoline filling and service stations in an area classified as a general business zone.

[2] Section 18(h) of the ordinance empowers the zoning board to grant variances in instances where such grant ". . . will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardships, so that the spirit of the ordinance will be observed and substantial justice done." (This power of the Board stems from §4122 of the Third Class City Code, Act of June 23, 1931, P. L. 932, added June 28, 1951, P. L. 662, §41, 53 P.S. §39122.

Dauphin County, the decision of the board was affirmed without taking additional testimony.

The following circumstances detailed in the opinion of the court below are fully supported by the evidence and are pertinent to this determination: "There have been no changes of the type and character of the zoned area in which the premises in question are located since the enactment of the zoning ordinance referred to above. Diagonally across the intersection of 17th Street and Berryhill Street, in an area zoned for heavy industry, there was erected, since the enactment of the ordinance, a large brick building used by the Megs Corporation for the manufacturing of macaroni products. The building was erected on land upon which there was formerly a lumber yard, surrounded by a high board fence.

"There is presently erected on the premises, for which the variance is sought, a large three story brick dwelling house. Several undeveloped lots adjoin the building. The building is in a very poor state of repairs. The premises were a part of an estate of a decedent who died February 10, 1957 and have not been occupied since that date. Continual and concerted efforts have been made by the heirs of the decedent to dispose of the property. Their efforts in this respect, however, have been in vain until on or about March 8, 1961, when an agreement of sale was entered into with the California Oil Company for a total sum of $35,000. The agreement was contingent upon the procurement of a variance."

Appellants vigorously urge that the board's action in refusing the variance was arbitrary and capricious and an abuse of its discretion and that it erred in concluding that the hardship presented was merely an economic one. It is contended also that the board failed to give proper consideration to the physical characteristics of the property and the unnecessary, "unique

or peculiar" hardship imposed by the zoning classification, as well as the poor state of repair of the dwellings and "the unsuccessful efforts for over a five year period to acquire a purchaser." It is further argued that the zoning classification, as applied to the property in question, "is inappropriate because the characteristics, size, location, etc., of the property in relation to the surrounding properties is radically different." It is asserted that because of "such things as present traffic conditions, the mixed character of the neighborhood, physical condition of the properties in relation to other properties, etc.," the parcel in question "should be considered unique and the surrounding neighborhood would not be adversely affected if a variance had been granted."

Our examination of the record satisfies us that appellants' contentions, in the light of prevailing decisions of this Court, are without legal force. Recently, this Court, in *Sheedy v. Zoning Board of Adjustment*, 409 Pa. 655, 187 A. 2d 907 (1963), reaffirmed the controlling principles in determining the propriety of the grant or refusal of a variance. The board here correctly applied these principles to the factual circumstances before it. We agree with the conclusions reached by the court below: "The only substantial hardship proved in this case is that unless the variance is granted, the appellants will not be able to sell the premises in question for the purpose of erecting thereon a gas station for a purchase price of $35,000. This circumstance, the Supreme Court of Pennsylvania said in Pincus v. Power, 376 Pa. 175, 181 (1954), does not constitute an unnecessary hardship."[3]

". . . We have examined the record and conclude there is evidence to sustain the findings of the Board

---

[3] A more recent case on this point is *Andress v. Zoning Board of Adjustment*, 410 Pa. 77, 88, 188 A. 2d 709, 714 (1963).

of Adjustment and that the proceedings are free from a violation of law and any abuse of discretion."

In the absence of a showing of a clear abuse of discretion or an error of law on the part of the board, we must conclude, as did the court below, that the board of adjustment properly refused the variance, and that decision must be sustained.

Order affirmed.

--------

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Albert C. Bomgardner et al., inherited, in 1957, three contiguous properties located at the northwest corner of 17th and Berryhill Streets in Harrisburg. One of the properties is a vacant tract consisting of 5 lots, the other two are residences. Ever since Bomgardner et al. came into posession of these properties they have unsuccessfully tried to sell them. In 1961 the California Oil Company negotiated with them to buy the properties for $35,000, provided they could obtain a variance which would permit the use of the land as a gasoline station.

The premises are located in what is designated in the zoning ordinance of Harrisburg as R-5, Residential District, this being the lowest residential classification, and it excludes a service or gas station as a permissible use. However, section 18(h) of the ordinance authorizes the zoning board to grant variances in cases where the public interest is not adversely affected and where "owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardships, so that the spirit of the ordinance will be observed and substantial justice done."[1]

--------

[1] This section is supported by §4122 of The Third Class City Code (53 P.S. §39122).

South Seventeenth Street is a heavily traveled artery in Harrisburg, running directly north and south, and serves as a key approach to the by-pass running east and west through the City. Berryhill Street carries considerable traffic, moving approximately 9,000 vehicles a day. A real estate agent, describing the commercial neighborhood, testified: "From Market Street. There is a Lumber Company, Megs Macaroni. Down 17th Street Pittsburgh Plate Glass, National Biscuit Co., a laundry, a new warehouse is being built."

The fact situation thus clearly supports the position of the appellants that their premises are no longer suitable for residential purposes and cannot be sold reasonably for purposes consistent with the zoning ordinance, either as separate parcels or as one unit.

The prospects of constructing for sale new homes on the five vacant lots are practically nil. The two dwellings already existing on the other two tracts were constructed over sixty-five years ago and do not adapt to present residential use. The conclusion is irresistible that the appellants are faced with a hardship special and peculiar to their property.

As a purse cannot be made from a sow's ear, so also a noisy, dust-laden restless community does not become a residential, tree-shaded, quiet haven through the instrumentality of a zoning ordinance. A community is not like a petrified forest, indifferent to time, climate and world events. It is raw material in the hands of the invisible architect who shapes it according to the needs of the environment and the best interests of all of the inhabitants in the area.

The lower court said: "The only substantial hardship proved in this case is that unless the variance is granted, the appellants will not be able to sell the premises in question for the purpose of erecting thereon a gas station for a purchase price of $35,000."

If this statement reflected the actual situation, the appellants would indeed not be entitled to a variance. The record, however, shows that the unique hardship resulting to the appellants is not because of their inability to sell the property for $35,000, but because of the impossibility to sell it for *any* purpose consistent with an R-5 classification.

Variances should not, of course, be bestowed with a lavish hand. However, where a man's land, instead of being used so that it provides him with habitation, recreation and comfort, or income, sprouts only rocks of debt, frustration and despair, because of a local restriction which, in its application in this particular instance, does not benefit the community, we are confronted with a question as to whether the property owner in question is not being deprived of the reasonable fair use of his property without due process of law. The history, location and condition of the property in this case makes out a hardship special and peculiar to it, meeting the criteria of the adjudicated cases in this field.

Zoning restrictions are intended to help the community and not harm it. It is for this reason that, acknowledging the overall merit of a given restriction, lawmakers still realize that there are situations which authorize a loosening of the zoning strait jacket where, by doing so, the "public interest" will not be harmed and "substantial justice" will be done.

The testimony reveals that the granting of the variance here applied for will not only not be contrary to the best public interests but it will enhance and benefit those interests. The two 64-year old dilapidated houses and the five uninhabited neglected lots present a picture of waste, abandon and depression which can quickly be transformed into one of brightness and wholesome progress. Real estate experts testified that the removal of the ramshackle houses and the erection

of the gasoline station would stabilize values of the nearby properties, ease the heavy traffic load at the Berryhill-Seventeenth Street intersection, and increase visibility at this point, thus potentially reducing traffic mishaps. The service station would be constructed in accordance with rigid specifications and standards calling for the utmost safety precautions in installation and operation.

I would hold that the board abused its discretion in refusing to grant the variance and that the court below erred in not so holding.

Since, in my view, this Court confirms those two errors, I dissent.